UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | |
|---|---|
| KARIAN HARRIS,<br>on behalf of herself and all others similarly situated,<br><br>                              Plaintiffs,<br><br>                v.<br><br>CITY OF AUSTIN,<br><br>                             Defendant. | Civil Action No. 15-cv-956-SS |

## PLAINTIFF'S OPPOSED MOTION FOR CLASS CERTIFICATION

Putative class members in this case face the threat of jail solely because they cannot afford to pay their debts. The City of Austin, through its operation of the Austin Municipal Court, regularly jails people who are too poor to pay their fines and fees for petty misdemeanors without appointing an attorney to represent them and without asking whether they have the money to pay their debt. Plaintiff brings this class action seeking injunctive and declaratory relief from violations of her Sixth and Fourteenth Amendment rights to counsel, due process, and equal protection.

Plaintiff moves for certification of the putative class of "all persons who, now or in the future, are unable to satisfy their criminal judgment debt assessed in Class C misdemeanor cases in Austin Municipal Court" under Rules 23(a) and 23(b)(2) of the Federal Rules of Civil Procedure. Plaintiff also moves for appointment of the undersigned counsel to represent the certified class under Rule 23(g) of the Federal Rules of Civil Procedure.

I.      **Background**

      A.      **Named Plaintiff**

Plaintiff Karian Harris is a thirty-five-year-old Austin resident, mother, and sole caretaker of seven minor children. Ex. A (Decl. of Karian Harris) ¶ 1. Ms. Harris makes less than $500 a month at her job as a childcare aid at Barrington Elementary School, which amounts to less than $6000 a year. *Id*. ¶ 2. She has no other sources of income. *Id*. She receives food stamps, Section 8 housing assistance, and free school lunches for her children. *Id*.

Over the last 14 years, the City of Austin assessed many traffic tickets against Ms. Harris. *Id*. ¶ 3. Ms. Harris did not have the resources to satisfy her traffic ticket debts because of her modest income and the expenses necessary to feed and shelter her children. *Id*. ¶ 3. In many of her cases, because she could not satisfy her debts, in the Austin Municipal Court issued warrants for her arrest. Ex. B (Austin Municipal Court Docket Sheets for Karian Harris) at 12, 14, 16, 19, 21, 23, 25, 27, 29, 31 (referring to capias pro fine warrant as a "commitment"; indicating issuance of capias pro fine warrant as "commitment issued and activated").

Ms. Harris was arrested in December 2010, and an Austin Municipal Court judge ordered Ms. Harris to spend more than two weeks in jail. Ex. A ¶¶ 5–6. She served the full term and missed Christmas with her children. *Id.* ¶ 6.

About two years after Ms. Harris's 2010 jail term, the City of Austin assessed three more tickets against her, all of which arose from a single traffic stop in January 2013. *Id.* ¶ 10; Ex. B at 5–7. Ms. Harris was arrested for those tickets in June 2013. Ex. A ¶ 11; Ex. B at 5–7. Despite Ms. Harris's poverty, an Austin Municipal Court judge jailed Ms. Harris because she could not pay $600 on the spot. Ex. A ¶ 12. Ms. Harris served four days in jail. *Id.*

On both occasions when the Austin Municipal Court jailed Ms. Harris, the judge did not ask her about her income, her dependents, or other factors bearing on her ability to pay. *Id.* ¶¶ 7, 13, 19. The judge did not offer community service, or inquire into the extent of her ability to complete community service, on either occasion. *Id.* The judge did not consider reducing the debts based on Ms. Harris's ability to pay. *Id.* ¶ 19. The judge did not inquire into her ability to afford counsel, take any steps to appoint counsel, or obtain a knowing, voluntary, and intelligent waiver of the right to counsel. *Id.* ¶ 16. Ms. Harris could not afford counsel, and was not represented by counsel when she entered a plea on any one of her traffic tickets. *Id.*

Subsequent to jailing Ms. Harris in 2013, the City has given her two more tickets—one for lack of insurance, and the other for not having a driver's license. *Id.* ¶ 17; Ex. B at 1–4. Ms. Harris has appeared in court on these tickets and made her best effort to satisfy the court's order, but she cannot afford to make the monthly payment ordered by the court. Ex. A ¶ 18. The court has issued warrants for Ms. Harris's arrest, Ex. B at 1–4, but the court has not offered her any solution other than paying a debt she cannot afford, or undertaking community service to an extent that is an undue hardship for her to perform. Ex. A ¶ 19. As a result, it is very likely that the Austin Municipal Court will jail Ms. Harris once again, without an ability to pay hearing or appointment of counsel, solely because Ms. Harris does not have the resources to satisfy her debt.

### B.      Austin Municipal Court Policies and Practices

The City of Austin has vested the Austin Municipal Court with jurisdiction over "fine only" crimes, which include Class C misdemeanors. Austin, Tex., Charter art. VI; Tex. Gov. Code §§ 29.003, 30.00003–30.00005. Class C misdemeanors, such as failure to signal while changing lanes or entering a park after hours, are the least serious crimes punishable in the State of Texas.

People who are too poor to pay the City's fines and fees for Class C tickets are given up to two options—a payment plan on the full amount of the debt, and sometimes, payment of the full debt at $12.50 per hour of community service—regardless of whether these options impose an undue hardship. *See* Ex. C (Austin Municipal Court Data) at 4 (showing that from October 2011 to September 2015, Austin satisfied over 19,000 cases through community service, and over 80,000 cases through jail credit, but waived fines or fees because of indigency in just 11 cases). The court has a policy and practice of ordering payment plans without making a meaningful inquiry into the person's ability to pay. *See* Ex. D (Application for Extension to Pay). When a person misses scheduled payments or community service deadlines, the court issues an arrest warrant referred to as a "capias pro fine" warrant. Ex. E (Austin Municipal Court Internal Rule 13.3). People who are arrested for open capias warrants are booked into Travis County Jail, where Austin Municipal Court judges hold brief hearings to determine whether to jail each person for failure to pay his or her debts. Ex. F (Decl. of Valerie Gonzales) ¶¶ 6–8, Ex. G (Decl. of Maria Salazar) ¶¶ 10–12, Ex. H (Decl. of Juan Martinez) ¶¶ 7–11.

No provision of municipal law or the Austin Municipal Court Rules discusses procedures or criteria for jailing people who have failed to pay their debt to the court.  *See* Ex. I (Austin, Tex. City Code § 2-10-21); Ex. J (Rules of the Austin Municipal Court). The Austin Municipal Court has a policy and practice of refusing to appoint counsel for Class C prosecutions, and of jailing people for failure to pay their Class C misdemeanor debts without determining whether the person is too poor to pay or considering alternatives to jail, such as tailoring fines to each person's financial resources. *See, e.g.*, Ex. A ¶¶ 7, 13, 19; Ex. F ¶¶ 6–8, Ex. G  ¶¶ 10–12, Ex. H ¶¶ 7–11. The court has a policy and practice of refusing to appoint counsel for Class C

4

prosecutions, despite the fact that the court frequently jails people for failure to pay fines and fees arising from their convictions. Ex. K (Austin Municipal Court Website Attorney FAQ).

### C.       Constitutional Implications of Municipal Court Policies and Practices

Plaintiff contends that the Austin Municipal Court's policies and practices violate the United States Constitution in four basic ways. First, the Austin Municipal Court has a policy and practice of jailing people who are too poor to pay their criminal judgment debt, without first inquiring into the reasons the person has failed to satisfy the debt and adequate alternatives to incarceration. Am. Compl. ¶¶ 37–56, 57–70 (Dkt. No. 15). Jailing people under these circumstances violates the Due Process Clause of the Fourteenth Amendment to the United States Constitution. *Bearden v. Georgia*, 461 U.S. 660, 666 (1983).

Second, the Austin Municipal Court has a policy and practice of jailing people solely because they are unable to satisfy their debts. Am. Compl. ¶¶ 37–56, 57–70. Sentencing a person to jail solely because they lack the resources to satisfy a debt to the court violates the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution. *Tate v. Short*, 401 U.S. 395 (1971); *Williams v. Illinois*, 399 U.S. 235 (1970).

Third, the Austin Municipal Court has a policy and practice of failing to appoint counsel for people charged with Class C misdemeanor offenses or to solicit a knowing, voluntary, and intelligent waiver of the right to counsel. Am. Compl. ¶¶ 37–56, 71–76. Jailing a person as a result of a criminal conviction obtained without the assistance of counsel violates the United States Constitution's Sixth Amendment right to counsel. *Alabama v. Shelton*, 535 U.S. 654 (2002); *Argersinger v. Hamlin*, 407 U.S. 25 (1972).

Fourth, the Austin Municipal Court has a policy and practice of holding jail commitment hearings without notice or appointment of counsel, failing to make findings of willfulness before

5

jailing, and jailing people with unclear orders of commitment to collect Class C debts. Am. Compl. ¶¶ 37–56, 77–82. Use of these tactics for civil judgment debt collection is prohibited by Texas law. Tex Const. Art. I, § 18 ("No person shall ever be imprisoned for debt."); *Ex parte Chambers*, 898 S.W.2d 257, 261–62 (Tex. 1995) (holding inability to pay as a complete defense to criminal contempt for failure to pay fine); *In re Griffith*, 434 S.W.3d 643, 646 (Tex. App. Houston [1st Dist.] 2014) (holding contempt requires written order of commitment; collecting cases); *In re Acceptance Ins. Co.*, 33 S.W.3d 443, 448–49 (Tex. App. Ft. Worth 2000) (holding contempt orders require advance written "full and unambiguous notice of an accusation of contempt"; collecting cases); *Ex parte Rosser*, 899 S.W.2d 382, 385 (Tex. App. Houston 1995) (holding involuntary inability to comply a complete defense to contempt); *Ex parte Strickland*, 724 S.W.2d 132 (Tex. App. Eastland 1987) (holding indigent defendants entitled to counsel before imprisonment in any contempt case). Use of unduly harsh and discriminatory debt collection practices against people who are too poor to pay criminal judgment debt, when such practices are prohibited to collect civil judgment debt, violates the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution. *James v. Strange*, 407 U.S. 128 (1972).

### D.    Procedural History

Plaintiffs Valerie Gonzales and Maria Salazar filed a class certification motion contemporaneously with the original complaint.[1] Dkt. No. 4. Although Plaintiffs Gonzales and Salazar had not had the benefit of discovery, they moved for class certification in order to invoke the protection of the relation-back doctrine. The relation-back doctrine protects the district court's authority to certify a class where "defendants have the ability by tender to each named

---

[1] After filing, both Ms. Gonzales's and Ms. Salazar's claims were mooted when the City dismissed charges, granted jail credit, and approved of plea deals in their respective cases.

plaintiff effectively to prevent any plaintiff in the class from procuring a decision on class certification." *Zeidman v. J. Ray McDermott & Co.*, 651 F.2d 1030, 1050–51 (5th Cir. 1981) (collecting similar precedent from other circuits). Where the defendant has power to moot claims for injunctive relief by dismissing criminal charges, negotiating pleas, or modifying conditions of a sentence, the claim falls squarely within the scope of the relation back doctrine. *U.S. Parole Comm'n v. Geraghty*, 445 U.S. 388 (1980) (permitting relation back where defendant may moot individual claims by modifying conditions of parole); *Gerstein v. Pugh*, 420 U.S. 103, 110 n.11 (1975) (permitting relation back where defendant may moot individual claims by dismissal of charges or negotiation of a favorable plea). Under the doctrine, even if the named plaintiffs' individual claims are mooted, the district court retains jurisdiction to rule on a diligently filed class certification motion so long as there is a live controversy between the defendants and the putative class. *Fontenot v. McCraw*, 777 F.3d 741, 751 (5th Cir. 2015) ("*Zeidman* is predicated on a class certification motion's having been diligently filed and pursued at the time the named plaintiff's claim becomes moot.").

Plaintiff Karian Harris hereby moves for certification and seeks the protection of the relation-back doctrine. While Plaintiff has not had the benefit of discovery,[2] she files this motion at the outset of her case to ensure that the motion is diligently filed. Should Defendant moot

---

[2] Discovery will likely reveal facts bearing on the class definition. A district court has wide discretion to limit, modify, or redefine the class to provide a workable class definition. *In re Monumental Life Ins. Co.*, 365 F.3d 408, 414 (5th Cir. 2004) (reversing denial of certification because, among other things, the district court did not consider redefining the class). The wide discretion courts have to re-define the class is appropriate, given the nature of class action litigation. "[H]olding the plaintiffs to the plain language of their definition would ignore the ongoing refinement and give-and-take inherent in class action litigation, particularly in the formation of a workable class definition." *Id.*

Plaintiff's individual claim for injunctive relief, she requests that the Court exercise its jurisdiction to rule on this class certification motion.

## II.   Argument

Under Rule 23 of the Federal Rules of Civil Procedure, the party seeking class certification must show that:

(1)   the class is so numerous that joinder of all members is impracticable;

(2)   there are questions of law or fact common to the class;

(3)   the claims or defenses of the named parties are typical of the claims or defenses of the class; and

(4)   the named parties will fairly and adequately protect the interest of the class.

Fed. R. Civ. P. 23(a). Additionally, the class must satisfy one of the requirements in Rule 23(b). Fed. R. Civ. P. 23(b); *Amchem Prods., Inc. v. Windsor*, 521, U.S. 591, 614 (1997). Here, because Plaintiff seeks classification under Rule 23(b)(2), she must show that "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." *In re Rodriguez*, 695 F.3d 360, 365 (5th Cir. 2012) (affirming certification of class of debtors challenging creditor's collection tactics under Rule 23(b)(2)).

The Fifth Circuit has held that, in class actions to vindicate civil rights, courts should not apply rules about the burden of proof "rigidly or blindly." *Zeidman v. J. Ray McDermott & Co.*, 651 F.2d 1030, 1038 (5th Cir. 1981) (quoting *Jones v. Diamond*, 519 F.2d 1090, 1099 (5th Cir. 1975)). While the Court must perform a "rigorous analysis" to determine whether to certify a class, *Wal-Mart v. Dukes*, 133 S.Ct. 2541, 2551–52 (2011), the Court may not require the plaintiffs to establish their claims at the class certification stage. *Amgen Inc. v. Connecticut*

*Retirement Plans and Trust Funds*, 133 S.Ct. 1184, 1194–95 (2013) ("Rule 23 grants courts no license to engage in free-ranging merits inquiries at the certification stage. Merits questions may be considered to the extent—but only to the extent—that they are relevant to determining whether the Rule 23 prerequisites for class certification are satisfied."). At the certification stage, the plaintiff need only provide evidence to "demonstrate that a particular contention is common, but not that it is correct." *In re Deepwater Horizon*, 739 F.3d 790, 811 (5th Cir. 2014).

### A.    Numerosity

Plaintiff's proposed class is sufficiently numerous to make joinder impracticable. Fed. R. Civ. P. 23(a)(1). There is no fixed number of class members required for a finding of numerosity. Instead, the key question is "whether joinder of all members is practicable in view of the numerosity of the class and all other relevant factors." *Zeidman*, 651 F.2d at 1038. These other relevant factors include "the geographical dispersion of the class, the ease with which class members may be identified, the nature of the action, and the size of each plaintiff's claim." *In re TWL Corp.*, 712 F.3d 886, 894 (5th Cir. 2013). Courts also consider "judicial economy arising from the avoidance of a multiplicity of actions." *Id.* (citations omitted). Finally, "the fact that the class includes unknown, unnamed future members also weighs in favor of certification." *Pederson v. Louisiana State Univ.*, 213 F.3d 858, 867 n.11 (5th Cir. 2000).

The Fifth Circuit has held that "[t]he general rule encouraging liberal construction of civil rights class actions applies with equal force to the numerosity requirement of Rule 23(a) (1)." *Jones v. Diamond*, 519 F.2d 1090, 1100 (5th Cir. 1975).  Joinder is generally impracticable when a class consists of forty members or more. Newberg on Class Actions § 3:11 (5th ed.); *Mullen v. Treasure Chest Casino, LLC*, 186 F.3d 620, 624 (5th Cir. 1999) (citing *id.*).

Here, the proposed class consists of all persons who, now or in the future, are unable to satisfy their criminal judgment debt assessed in Class C misdemeanor cases in Austin Municipal Court. This class consists of thousands of people. For example, in fiscal year 2012–2013, the Austin Municipal Court presided over 115,545 new prosecutions and issued 65,711 warrants and commitment orders.[3] Ex. L (Austin, Texas Approved Budget for 2014–15). During that same time period, 19.1% of Austin residents lived below the poverty line. Ex. M (Quickfacts from U.S. Census Bureau: Austin, Texas). Even if impoverished people are marginally over- or under-represented in Austin Municipal Court cases, warrants, and commitment orders, there would be thousands of people who are too poor to pay their tickets, and who are currently being threatened with arrest and incarceration.

The proposed class thus satisfies the numerosity requirement of Rule 23(a)(1). It includes thousands of present members, far more than the number of class members that the Fifth Circuit has cited as presumptively numerous. *Mullen,* 186 F.3d at 624. Joinder of so many cases would be impracticable, and judicial economy would undoubtedly suffer. Identification of so many geographically dispersed present and future class members would be difficult. Even if there were any doubt about the numerosity of the class, the Court should construe this motion liberally, permit discovery on numerosity if needed, and permit the Plaintiff to vindicate class members' civil rights by filing additional evidence of numerosity.  *Accord Unger v. Amedisys Inc.*, 401 F.3d 316, 321 (5th Cir. 2005) (describing courts' ability to order discovery to make a meaningful determination of certification issues).

---

[3] The City of Austin Budget reports data about warrants and commitment orders together, as one data point.

B.    **Commonality**

The proposed class shares common questions of law and fact that satisfy Rule 23(a)(2). Commonality requires that the class members' claims "depend on a common contention" for which "determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Dukes*, 131 S. Ct. at 2551 (quoting *Falcon*, 457 U.S. at 157). Courts generally "find[] common questions of law to be at a high level of generality . . . and questions of fact similarly broad . . . ." Newberg on Class Actions § 3:19 (5th ed.) (citations omitted). Commonality also requires these common questions "to generate common *answers* apt to drive the resolution of the litigation." *Dukes*, 131 S.Ct. at 2551 (emphasis in original) (quoting Richard A. Nagareda, *Class Certification in the Age of Aggregate Proof*, 84 N.Y.U. L. Rev. 97, 132 (2009)). These "common answers" may be answers about the "defendant's injurious conduct." *Deepwater Horizon*, 739 F.3d at 811 (citing *M.D. ex rel Stukenberg v. Perry*, 675 F.3d 832, 840 (5th Cir. 2012)).

This case requires resolution of many questions of law and fact that are common to all class members. These questions include:

    a.  Whether the Austin Municipal Court has a policy and practice of failing to ask about the reasons for a person's failure to pay before jailing that person for failure to pay;

    b.  Whether the Austin Municipal Court has a policy and practice of failing to consider alternative punishments before jailing a person for failure to pay;

    c.  Whether the Austin Municipal Court has a policy and practice of declining to appoint counsel in Class C misdemeanor cases, then jailing people for the resulting convictions;

    d.  Whether the foregoing policies and practices violate the Sixth Amendment, the Due Process Clause, and/or the Equal Protection Clause;

    e.  Whether the foregoing policies and practices are officially promulgated policies, final decisions by municipal policymakers, practices or customs so widespread and well-settled that knowledge is attributable to municipal policymakers, and/or

11

the byproduct of Defendant's deliberate indifference to putative class members' rights under the Sixth Amendment, the Due Process Clause, and/or the Equal Protection Clause.

As these common questions demonstrate, the Plaintiff's claims in this case hinge on common contentions about systemic failures at the Austin Municipal Court. These claims stand or fall on answers about the court's policies and practices toward all class members. Am. Compl. ¶¶ 37–82. The Court's findings with respect to Plaintiff's contentions about the Austin Municipal Court's policies and practices "will resolve an issue that is central to the validity of each one of the claims in one stroke." *Dukes*, 131 S. Ct. at 2551.

### C.   Typicality

The named Plaintiff in this case has claims typical of people who are unable to satisfy their debt to the Austin Municipal Court. "The test for typicality is not demanding." *Stirman v. Exxon Corp.*, 280 F.3d 554, 562 (5th Cir. 2002). To meet the typicality requirement, the named plaintiff's claims must be "typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). "Typicality does not require a complete identity of claims." *Stirman*, 280 F.3d at 562. In analyzing typicality, "the critical inquiry is whether the class representative's claims have the same essential characteristics of those of the putative class. If the claims arise from a similar course of conduct and share the same legal theory, factual differences will not defeat typicality." *Id.*

Here, the named Plaintiff has the same essential characteristics as those of the potential class, as she faces the inevitability that the Court will eventually arrest and jail her without holding a meaningful hearing on her ability to pay. Ex. A ¶¶ 7, 13, 20.  The named Plaintiff does not have the resources to satisfy her criminal judgment debt, and she was denied the right to counsel in her underlying Class C prosecutions. *Id.* ¶¶ 16, 18–20. The Plaintiff has not received any unusual treatment from the Austin Municipal Court that affects the typicality of her claims.

12

*Id*. The Plaintiff exemplifies the typical way that the City's unconstitutional policies and practices harm people who are too poor to pay. *Cf. In re Rodriguez*, 695 F.3d 360, 368 & n.11 (5th Cir. 2012) (upholding typicality where named plaintiff was subject to "a regular practice within [defendant organization] of not following" the law).

### D.   Adequacy

The Plaintiff is an adequate class representative.  The final requirement of Rule 23(a) is that "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). To determine adequacy, courts consider "[1] the zeal and competence of the representative[s'] counsel and ... [2] the willingness and ability of the representative[s] to take an active role in and control the litigation and to protect the interests of absentees[.]" *Stirman*, 280 F.3d at 563 (citation omitted). "Class representatives must 'be part of the class and possess the same interest and suffer the same injury as the class members.'" *In re Deepwater Horizon*, 785 F.3d at 1015 (citation omitted). "Differences between named plaintiffs and class members render the named plaintiffs inadequate representatives only if those differences create conflicts between the named plaintiffs' interests and the class members' interests." *Mullen*, 186 F.3d at 625–26.

The Fifth Circuit has specified that, while courts should consider class representatives' "willingness and ability . . . to take an active role in and control the litigation," the representatives "need not be legal scholars and are entitled to rely on counsel." *Berger v. Compaq Computer Corp.*, 257 F.3d 475, 483 (5th Cir. 2001). "The representative class members are entitled to work with, and rely upon, their counsel in pursuing their claims and navigating the complicated legal and factual issues associated with" complex litigation. *Stoffels v. SBC Commc'ns, Inc.*, 238 F.R.D. 446, 455 (W.D. Tex. 2006). An example of an adequate class representative is one with "commendable familiarity with the complaint and the concept of a

class action." *Krim v. pcOrder.com, Inc.*, 210 F.R.D. 581, 587 (W.D. Tex. 2002) (citing *Horton v. Goose Creek Indep. Sch. Dist.*, 690 F.2d 470, 484 (5th Cir. 1982)).

The named Plaintiff in this case has agreed to act as a class representative.  She has met with counsel and discussed the responsibility of prosecuting a class action on behalf of Austin's poorest residents; she can demonstrate "commendable familiarity with the complaint and the concept of a class action." *Krim*, 210 F.R.D. at 587. Ms. Harris is familiar with the Austin Municipal Court procedures challenged here and the constitutional protections she seeks to vindicate. Ms. Harris is prepared to respond to discovery requests in this case. She has worked together with the undersigned attorneys to develop the claims in this case. Finally, Ms. Harris is enthusiastic about fulfilling the role and duties of a class representative to protect class members' fundamental constitutional rights.

Ms. Harris is part of the class, shares the class's interests, and suffers the same injuries as the class members. Furthermore, there are no known conflicts between the interests of Ms. Harris and those of the class members. The interests of Ms. Harris and the class members are aligned: all are indigent people seeking procedural protections from being jailed because of fines, fees, and court costs they cannot afford.

Finally, counsel for the named Plaintiff and the putative class are both competent and zealous. Plaintiff's counsel from the Texas Fair Defense Project, the University of Texas School of Law Civil Rights Clinic, Susman Godfrey, and Drinker Biddle have extensive experience litigating class actions and civil rights cases. Exs. N–S (Decs. of Plaintiff's Counsel). Counsel have a history of zealous advocacy on behalf of their clients, as evidenced by the filings in those cases and favorable results obtained. *Id*. They are extremely familiar with the factual and legal issues involved in this lawsuit. *Id*.

14

Accordingly, the named Plaintiff meets Rule 23(a)'s adequacy requirement.

**E.      Rule 23(b)(2)**

The proposed class in this case falls squarely under Rule 23(b)(2). To certify a class under Rule 23(b)(2), the party seeking class certification must show that "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." Fed. R. Civ. P. 23(b)(2). "This is a simple inquiry in most cases." Newberg on Class Actions § 4:28 (5th ed.). The requirement of a generally applicable set of actions "ensures that the class's interests are related in a manner that makes aggregate litigation appropriate . . . and therefore efficient." *Id.* Thus, "Rule 23(b)(2) applies only when a single injunction or declaratory judgment would provide relief to each member of the class." *M.D. ex rel. Stukenberg*, 675 F.3d at 846 (quoting *Dukes*, 131 S. Ct. at 2557).

Civil rights class actions seeking injunctive and declaratory relief are "prime examples" of the types of actions that Rule 23(b)(2) is meant to capture. *Amchem Products Inc.*, 521 U.S. at 614. Because Rule 23(b)(2) classes seek "an indivisible injunction benefitting all its members at once," individualized inquiries into "whether class issues predominate" are wholly unnecessary, and "[p]redominance and superiority are self-evident." *Dukes*, 131 S. Ct. at 2558 (emphasizing the importance of classwide relief based on the structure of Rule 23(b)(2) and noting the Rule's historical basis in civil rights cases).

This case is the kind of class action that Rule 23(b)(2) is meant to capture. *Amchem Products Inc.*, 521 U.S. at 614; *see also* Newberg on Class Actions § 4:40 (5th ed.) ("While civil rights cases are often maintained against public and private defendants under civil rights *statutes*, many (b)(2) class actions challenge government actions on *constitutional* grounds as well.")

15

(emphasis in original). The class's interests are sufficiently related to warrant aggregate litigation. The City has acted on grounds that apply generally to the class—the City's unconstitutional policies and practices apply to every indigent defendant in the Municipal Court's jurisdiction. Injunctive and declaratory relief is appropriate to the class as a whole precisely because the only adequate relief is enjoining the Municipal Court's unconstitutional policies and practices. Furthermore, it is far more efficient for this court to grant injunctive and declaratory relief protecting all of Austin's indigent defendants than to extend that relief piecemeal through thousands of individual suits. The proposed class falls within the requirements and the spirit of Rule 23(b)(2).

**F.       Rule 23(g)**

Federal Rule of Civil Procedure 23(g) requires that the court appoint class counsel for any class that is certified. Fed. R. Civ. P. 23(g)(1). Class counsel must "fairly and adequately represent the interests of the class." Rule 23(g)(1)(B). The Court must consider factors including: 1) "the work counsel has done in identifying or investigating potential claims in this action;" 2) "counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action;" 3) "counsel's knowledge of the applicable law;" and 4) "the resources that counsel will commit to representing the class." Rule 23(g)(1)(A).

Each of the undersigned attorneys satisfies these four requirements. First, Plaintiff's counsel have interviewed Plaintiff and other class members, performed relevant legal research and drafting, and worked together to investigate the facts and legal claims herein. Exs. N–S. Second, Plaintiff's counsel have significant experience with litigating civil rights actions, including claims under the Fifth, Sixth, and Fourteenth Amendments. *Id*. Third, Plaintiff's counsel will contribute significant resources to the representation of this class, individually and

jointly. *Id*. Plaintiff's counsel have built strong and effective relationships with the named Plaintiff and numerous members of the putative class. *Id*. Therefore, Plaintiff's counsel satisfy the four criteria in Rule 23(g), and they respectfully request appointment as class counsel.

## III.   Conclusion

For the reasons set forth above, Plaintiff respectfully requests that the court certify the proposed class pursuant to Rule 23 of the Federal Rules of Civil Procedure.

Respectfully Submitted,

By:   /s/ Rebecca Bernhardt

Rebecca Bernhardt
Texas Bar No. 24001729
Susanne Pringle
Texas Bar No. 24083686
Texas Fair Defense Project
510 S. Congress Ave., Suite 208
Austin, TX 78704
(512) 637-5220 (t)
(512) 637-5224 (f)
rbernhardt@fairdefense.org
springle@fairdefense.org

Ranjana Natarajan
Texas Bar No. 24071013
Trisha Trigilio
Texas Bar No. 24075179
University of Texas School of Law
Civil Rights Clinic
727 East Dean Keeton Street
Austin, TX 78705
Tel: 512-232-7222
Fax: 512-232-0800
rnatarajan@law.utexas.edu
ttrigilio@law.utexas.edu

Joseph S. Grinstein (TX Bar No. 24002188)
Neal Manne (TX Bar No. 12937980)
SUSMAN GODFREY LLP
1000 Louisiana Street, Suite 5100
Houston, Texas 77002

17

Telephone:  (713) 651-9366
Facsimile:  (713) 654-6666
jgrinstein@susmangodfrey.com
nmanne@susmangodfrey.com

Brian A. Coleman (*pro hac vice*)
DRINKER BIDDLE & REATH LLP
1500 K Street, N.W.
Washington, D.C. 20005-1209
Telephone:  (202) 842-8800
Facsimile:  (202) 842-8465
Brian.Coleman@dbr.com

Lindsay B. Orr (*pro hac vice*)
DRINKER BIDDLE & REATH LLP
222 Delaware Ave., Suite 1410
Wilmington, DE 19801-1621
Telephone:  (302) 467-4200
Facsimile:  (302) 467-4201
Lindsay.Orr@dbr.com

**Exhibit List**

A.      Declaration of Karian Harris, dated January 11, 2016

B.      Austin Municipal Court Docket Sheets for Karian Harris as of January 8, 2016

C.      Self-Reported Data From Austin Municipal Court to the Office of Court Administration, October 2011–September 2015

D.      Application for Extension to Pay in the Austin Municipal Court

E.      Austin Municipal Court Internal Rule 13.3

F.      Declaration of Valerie Gonzales, dated August 19, 2015

G.      Declaration of Maria Salazar, dated October 7, 2015

H.      Declaration of Juan Martinez, dated January 11, 2016

I.      Austin, Tex. City Code § 2-10-21

J.      Rules of the Austin Municipal Court

K.      Austin Municipal Court Website: Appointment of Counsel, captured October 23, 2015

L.      Austin, Texas Approved Budget for 2014–15 (Excerpt)

M.      Quickfacts from United States Census Bureau: Austin, Texas

N.      Declaration of Rebecca Bernhardt, dated October 8, 2015

O.      Declaration of Susanne Pringle, dated October 8, 2015

P.      Declaration of Ranjana Natarajan, dated October 26, 2015

Q.      Declaration of Trisha Trigilio, dated October 9, 2015

R.      Declaration of Joseph Grinstein, dated October 26, 2015

S.      Declaration of Brian Coleman, dated January 11, 2016

## CERTIFICATE OF CONFERENCE

By my signature below, I certify that on January 5, 2016, Plaintiff's counsel contacted counsel for the City of Austin via email to ask whether the City opposes this motion. On the same day, counsel responded that the City opposes this motion.

Dated: January 11, 2016           By: /S/ Trisha Trigilio

Trisha Trigilio
Texas Bar No. 24075179
University of Texas School of Law
Civil Rights Clinic
727 East Dean Keeton Street
Austin, TX 78705
Tel: 512-232-7222
Fax: 512-232-0800
ttrigilio@law.utexas.edu

## CERTIFICATE OF SERVICE

By my signature below, I certify that on January 11, 2016 this filing was served on all counsel of record via the Court's electronic case filing system.

Dated: January 11, 2016           By: /S/ Trisha Trigilio

Trisha Trigilio
Texas Bar No. 24075179
University of Texas School of Law
Civil Rights Clinic
727 East Dean Keeton Street
Austin, TX 78705
Tel: 512-232-7222
Fax: 512-232-0800
ttrigilio@law.utexas.edu

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

KARIAN HARRIS,
on behalf of herself and all others similarly
situated,

                                          Plaintiffs,

                    v.                                        Civil Action No. 15-cv-956-SS

CITY OF AUSTIN,

                                          Defendant.

## PROPOSED ORDER GRANTING CLASS CERTIFICATION

SAM SPARKS, United States District Judge:

Plaintiff's Motion for Class Certification (Dkt. No. 24) is hereby granted. The Court

certifies this action as a class action on behalf of the following class:

All persons who, now or in the future, are unable to satisfy their criminal judgment debt
assessed in Class C misdemeanor cases in Austin Municipal Court.

This action is certified as a class action for the purpose of each claim raised in the complaint.

Counsel who have appeared for the named Plaintiff are hereby appointed as class counsel.


SO ORDERED.


Dated: _____                    _____
           Austin, Texas                                              SAM SPARKS
                                                              United States District Judge